UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

FILED
JAN 16 2002
U.S. DISTRICT COURT
EASTERN DISTRICT OF MO

| | |
|---|---|
| LEONARD PATE, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 4:98CV1517 CDP |
| BOARD OF POLICE COMMISSIONERS, et al., | ) |
| Defendants. | ) |

## MEMORANDUM OPINION

Leonard Pate claims that his constitutional rights were violated when he was arrested, in his home, without either a search or arrest warrant, and was subsequently beaten by the police. The only defendants remaining in this case are the St. Louis Board of Police Commissioners.

From the evidence presented to me I find that the law enforcement officers had probable cause to arrest Pate because they reasonably believed he was holding three people hostage. For the same reason, there were exigent circumstances that justified the police entering the apartment to arrest Pate immediately after they had negotiated and obtained the safe release of the hostages. As Pate has not shown that his constitutional rights were violated by the warrantless entry and arrest, he cannot impose liability on the Board of Police Commissioners for these acts.



Although Pate has produced evidence that he was injured during the arrest, he has failed to show that this was the result of any policy or custom on the part of the Board of Police Commissioners, or that his rights were violated because of any failure to train or other deficiency for which the Board could be held liable. I will therefore enter judgment in favor of defendants.

The jury trial of this case began on Monday, September 10, 2001, and three witnesses testified that first day of trial. As the case was preparing to resume on September 11, we learned of the terrorist attacks taking place in New York and Washington, and, after consulting with counsel, I discharged the jury. The parties stipulated that the case would resume as a non-jury trial and that I should decide the case based on all the evidence. The non-jury portion of the trial resumed on November 2. My findings here are based on all the evidence presented, including the deposition portions submitted by the parties.

## **Findings of Fact**

On September 27, 1991, police were dispatched to 5042 Maple in the City of St. Louis to investigate a claim that someone was flourishing a weapon. When they arrived Robert Reid and Juanita Reid told them that their sister, Mary Reid, who was Leonard Pate's girlfriend, was being held hostage in the upstairs apartment by Pate. The witnesses told police that Mary Reid had been seen

hanging from the balcony screaming for help, when she was pulled back in by Pate, who was armed with a revolver. Police were told that two other people were also being held in the apartment.

Police could hear a loud argument coming from the apartment. They knocked on the door but at first got no response. They continued to hear loud arguing. Eventually Pate and Mary Reid appeared at the door, but they did not open the door. Although Reid said she was fine, the officers were concerned because they could hear Pate speaking to her in the background.

Both Pate and Reid testified at trial that they could not leave the apartment because a key was broken off in the lock, and the door had been inoperable for several weeks. They testified that the only way they could enter or leave the apartment was to go through the downstairs apartment, which was also locked, so they could only enter or leave when their landlord was at home. Neither explained how George Taylor and Nathaniel Davis, their friends who were also in the apartment during this incident, had gotten in, or when they had arrived. Reid testified that she and Pate had been arguing over money, and that she believed her brother had called the police because he did not like Pate. Pate testified that the argument began because he told Reid that the landlord had said that Reid's brother had broken into the house and stolen some money. Both Reid and Pate denied that

Pate had a gun or was holding Reid against her will.

The police officers' testimony and their reports from the incident indicate officers first arrived at the scene at about 4:15 p.m. When they could not get Reid to come out of the apartment (and could not tell if she simply would not come out or could not), they called the Hostage Negotiation Team. This group of officers arrived at the scene at about 5:35 p.m. They continued trying to communicate with the occupants, and could see Reid from a window. At one point Reid came out onto the balcony of the apartment. According to her testimony, she again told the police that she was fine. She testified that Pate initially appeared with her, but she sent him back inside. She testified that she then stopped communicating with the police because she "didn't have anything to say to them."

At about 6:15, the police somehow gained entry to some part of the residence, and instructed Reid and Davis to exit the apartment. They did so. Reid told the police at that time that Pate had punched her in the face and that she had run screaming to the window for help. She also told the police that Pate threatened her and said he would kill anyone who tried to enter or leave the building. At trial, Reid denied that Pate had struck her and denied making these statements to the police.

Davis told the police that he had been drinking beer with Pate, Reid and

Taylor at the apartment when Pate became abusive and would not let anyone leave the apartment, threatening to shoot anyone who tried to leave.

At about 6:35 George Taylor came out of the apartment. He reported to police that Pate and Reid had argued over missing money and that Pate had punched Reid in the face. He also told the police that when he had tried to leave the apartment, Pate had become abusive and aggressive and had not allowed him to leave. Taylor told the police that Pate told him to sit at the kitchen table or he would be killed.

At 6:40 the police decided to "go tactical" and remove Pate from the apartment. They entered and found him lying on a bed. One of the arresting officers testified that they handcuffed him and then escorted him downstairs. That officer said they then took Pate to Regional Hospital as a routine practice in hostage situations to have him examined before incarcerating him. The supervisor of the Hostage Negotiation Team testified that experience and training teach that the time immediately after hostages are released is critical in hostage situations, and that standard practice is to enter immediately, if possible, to arrest the hostage-taker, in order to prevent him from taking his own life or from opening fire on the law enforcement officers and others outside. According to the police report, Pate was secured at 6:42 p.m.

Pate's version of his arrest is quite different. He states that he had gone to lie down on the bed because the stress of the situation was giving him a headache, and the next thing he knew Reid and the others were gone and the police were storming the apartment. He testified that they immediately jumped on him and began punching, stomping, and kicking him. He says they handcuffed him, called him "nigger," and dragged him from room to room by his pants cuffs demanding that he tell them where his drugs were. He says they held him in the apartment for about an hour, beating him the whole time.

Pate was taken to Regional Hospital and examined. According to the hospital records, he was admitted to the Emergency Room at 7:29 p.m. One of the examining doctors testified, by deposition, that Pate suffered from numerous bruises and contusions on his face and back which indicated that he had been assaulted. He was diagnosed as having a perforated ear drum and contusions on his eye and ribs.

Plaintiff presented evidence related to training of St. Louis police officers and handling of citizen complaints. The evidence shows that officers receive training in arrest, search and seizure, and use of force, both at the police academy and throughout their careers, through seminars and other meetings. The evidence also shows that the department has policies in place for dealing with citizen

complaints, and for disciplining officers under appropriate circumstances.

## Discussion

From the conflicting evidence presented, I have no difficulty crediting the testimony of the arresting police officers over that of Pate and Reid regarding the circumstances leading up to Pate's arrest. The contemporaneously created documents as well as common sense show that the police were notified of a potential hostage situation and, after investigation, acted appropriately in entering the building and arresting Pate without a warrant.

Everything at the scene confirmed the earlier report that Pate was holding Reid and the others hostage, including Pate's refusal to leave the building. When Reid, Taylor and Davis left the building, they told the police that Pate had refused to let them leave and had threatened to kill or shoot them. The police thus had probable cause to believe that a crime had being committed and that Pate, who remained in the building, was a danger and could be armed. Exigent circumstances clearly existed for them to enter the building and arrest him, and Pate simply has not shown that his constitutional rights were violated by the warrantless entry and arrest.

The evidence is less clear regarding the claim that excessive force was used during the arrest. Although I do not believe Pate's testimony that he was beaten

and dragged through the apartment for over an hour (among other things, this testimony is inconsistent with the evidence showing he was seen in the Emergency Room less than forty minutes after the tactical team secured him inside the apartment), I also cannot credit the police officer testimony that absolutely nothing happened to cause Pate's injuries. The medical records and the doctor's testimony clearly showed that Pate had injuries, and I have no difficulty drawing the inference that these injuries were sustained during his arrest. I do not believe Pate's story of what happened, neither do I believe the officers' story that nothing happened. The burden of proof is on Pate, of course, to show that his constitutional rights were violated. Because the only defendant in this case is the Board of Police Commissioners, however, I need not resolve the factual dispute, because even if I were to find that a constitutional violation occurred, Pate has failed to meet his burden of showing that the Board of Police Commissioners is liable for that presumed violation.

In order to hold the Board liable for use of excessive force by an arresting officer, Pate would have to prove not only that a constitutional violation occurred, but also that the constitutional violation was the result of a Board of Police Commissisoners' custom, policy, ordinance, regulation, or decision. See Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978). See also St. Louis v.

Praprotnik, 485 U.S. 112, 128 (1988). "Generally, an isolated incident of police misconduct by subordinate officers is insufficient to establish municipal policy or custom." Wedemeier v. Ballwin, 931 F.2d 24, 26 (8th Cir. 1991), citing Oklahoma City v. Tuttle, 471 U.S. 808, 823-24 (1985).

Here the only evidence regarding policy or custom showed that the Board of Police Commissioners has established policies, including disciplinary policies, regarding the proper use of force, and that it trained its officers regarding the same. Even if I were to conclude that the officers who arrested Pate violated his constitutional rights by subjecting him to excessive force, there is no evidence from which I could conclude that this was done as part of a custom or policy of the police board, or that their failure to supervise or train the arresting officers caused the violation. Thus, there is simply no basis for holding the Board of Police Commissioners liable in this case.

## Conclusion

The evidence is very clear that Pate's constitutional rights were not violated by the police officers' warrantless entry into his apartment and warrantless arrest of Pate. The officers had more than ample probable cause to believe both that Pate had committed a felony and also that he posed a serious danger unless arrested immediately. Since there was no constitutional violation at all, he cannot hold the

Board of Police Commissioners liable for the circumstances leading up to his arrest.

Although I cannot say from the evidence presented to me that the arresting officers did not use excessive force, I need not decide this issue, because even if they did use such force, there has been no evidence submitted from which I could find that the Board of Police Commissioners should be held liable on this claim. Thus, Pate cannot prevail on any of his claims.

A separate judgment in favor of defendant will be entered this same date.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 16th day of January, 2002.

UNITED STATES DISTRICT COURT -- EASTERN MISSOURI
INTERNAL RECORD KEEPING

AN ORDER, JUDGMENT OR ENDORSEMENT WAS SCANNED, FAXED AND/OR MAILED TO THE
FOLLOWING INDIVIDUALS ON 01/16/02 by bkirklan
               4:98cv1517    Pate vs Brd of Police Comm

42:1983 Civil Rights Act

| | | |
|---|---|---|
| Lisa Chase - | 98121 | Fax: 573-634-7822 |
| Lanette Gooch - | 95458 | Fax: 573-634-7822 |
| Steven May - | 28395 | Fax: 314-622-4956 |
| Victor Scott - | 54793 | Fax: 573-634-7822 |
| Andrew Williams - | 54044 | Fax: 314-622-4956 |

SCANNED & FAXED BY:

JAN 1 6 2002

**MJM**